Good afternoon, Your Honors, and may it please the Court. Spencer Scharf with my co-counsel Rapali Desai on behalf of Plaintiff Appellant Rivko Knox. I'll endeavor to reserve five minutes of my time for rebuttal. I'd like to emphasize three points about Plaintiff's preemption claim. First, Plaintiff is not asking this Court to expand federal power, but merely acknowledge the power that has been exclusively exercised by Congress since 1789. Second, Plaintiff's preemption claim is narrow and a modest one. Plaintiff simply contends that states cannot expand or contract the permissible methods of private carriage. Thus, Arizona's other ballot abuse laws would not be preempted. Third, Arizona cannot avail itself to the benefits of the unified national postal system and then disregard the longstanding rules governing that system. If Arizona wants to opt out of the federal private carriage laws, it could lobby Congress for permission to do so. It hasn't. Can you address what is the evidence, either in the text of the statute or otherwise, that Congress intended to create a space free for private hands to deliver mail uncompensated and intended not to have the states regulate it? What's the best evidence of that? Well, Your Honor, we think there's a comprehensive set of regulations and statutes that, if you look to the Supreme Court's precedent, including, we think most pertinently, Arizona of the United States, that when interpreting a statute that expressly carves out a conduct that is excluded from criminal sanctions, as is here, so 16, so 18 U.S.C. But in Arizona, the Supreme Court distinguished Daconis and said it was okay for the states to regulate alien employment. In that case, because the Congress hadn't specifically regulated it, in Arizona it was different because there were specific regulations of alien employment. So what specific regulations here, other than just the exemption of uncompensated carriers, can you point to for us? So, Your Honor, in implementing the private express statutes, the implementing regulations themselves clearly state, it's not just simply an exception, but it's also that individuals are permitted to carry by private hands or permitted to carry letters through special messengers. Those are all outlined in 39 CFR 310.3, where the implementing regulations, which Congress gave to the USPS to the power to implement, and they did implement those. Is that the best evidence, in your view? The language that says that private carriers, uncompensated, may do this uncompensated work, is that the best evidence of congressional intent, in your view? Well, I think the best evidence is 18 U.S.C. 1696C, where Congress clearly, in the statute itself, the language of the federal statute says, we are going to impose criminal sanctions on all private carriage except for this type of private carriage. And then 1696C is both the private hands exception and the special messenger exception. And I think if you were to look at Arizona v. United States, I think it's a more powerful preemptive language than there was in that case. Because in that case, the court needed to look to legislative history to determine whether or not they intended not to impose criminal sanctions. Here, this court need not look to legislative history because it has the language of Congress to look at, which says, we were going to impose a general ban on private carriage, and we're not going to impose civil or criminal sanctions on this type of conduct. And I think, you know, to use the colorful language of Justice Scalia and ISLA, here we do have a preemptive grin with a statutory cat. So in that opinion, ISLA Petroleum, is that right? Justice Scalia made clear that Congress couldn't subtly create a free space for non-regulation, and in fact said it wasn't created in that case. So I'm not sure how ISLA actually helps. I mean, the closest I saw in your briefs was LOC, which was clearly in an area of historical regulation. I think that was oil on the high seas or something like that. Your Honor, so if, for example, if you were to take it that the individuals don't have this right to carry letters, then the state of Arizona's position as to how they interpret the state statute wouldn't make sense. What would give a caregiver or a family member or a house member the right to deliver an individual's early ballot? I guess the question is, could the state regulate it, not whether they have a right under federal law? Because the federal law, as you point out, clearly says these are accepted from federal control. But the question for us is, did Congress clearly signal its intent not to allow states to regulate that? And that's where I'm asking you for the help in identifying what's the best evidence. And I understand, Judge Akuda, and I appreciate the opportunity, because I do think there's a number of other statutes as well. So I think you could look to 39 U.S.C. 601, which is also considered part of the private express statutes. There, Congress laid out additional methods of private carriage that were permissible and stated in the statute itself, quote, a letter may be carried out of the mails when. And then it goes on to describe a number of examples, including if one were to put postage on a letter and then cancel out in ink the stamps, not only could someone carry that without compensation, but you could charge for that delivery in that instance, because that's what Congress intended, as long as in that instance they were getting the funds for the postage. And in that statute as well, so that's B-1. B-2 says that letters may be carried out of the mail when a letter weighs more than 12 ounces. And B-3 states that a letter may be carried out of the mails when the private express statutes are suspended. And so the distinction between the exceptions versus suspensions is one is done through the implementing regulations that Congress allowed, and one of those suspensions is the suspension for urgent letters. And that's found, again, in the suspensions, and that's 39 CFR 320.6. And I think the urgent letter suspension is perhaps very important in this case, because on the day that — on Election Day, if one were to need to deliver your ballot, the concept behind the urgent letter exception is that it needs to — the value of the letter would diminish if it wasn't delivered within a certain time period. And, of course, as this Court well knows, that if that ballot isn't delivered by 7 p.m. on Election Day, it will lose its value. And so, again, that is an express — not just exception, but an express permission authorization that Congress, through its implementing regulations, has given individuals to deliver important letter mail. And so I think there's a number of excellent examples of congressional intent here that Congress intended. And I think it's also — if I can go back to Arizona of the United States for a quick sec. The conduct that this Court and the Supreme Court said that Arizona couldn't regulate wasn't something that was lawful under federal law. It was unlawful. It was already unlawful to work without authorization. Here, the conduct that Arizona — But there the Supreme — there the United States Congress had created a program to make it unlawful and to regulate it. And the Supreme Court said that's what makes the difference between this case and our earlier decision, DECONUS, where there was not a very evolved regulatory program on that issue. So it wasn't just that Congress had immigration laws, laws regulating immigration, and said nothing about employment. They had a very evolved regulatory program in Arizona, and that's what made the difference. So here, I see the exceptions for the private hands, but I don't see evolved regulations controlling or governing it. Your Honor, if you were to look again at the regulations governing the exceptions — so, for example, 39 CFR 310.4 talks about the responsibilities of carriers. Now, that's all private carriers, whether it's UPS, FedEx, or Ms. Knox, who is a volunteer private carrier. That's a clear example where Congress, through its implementing regulations, is comprehensively regulating — in fact, I would say they so comprehensively regulate private carriers, they have done so to the ounce and the hour. So they've said if it needs to be delivered by 10 — if a mail is dropped off at 10 p.m., it needs to be delivered within six hours. They provided a very comprehensive regulation that governs all private carriers. And it may seem that we normally think of private carriers as commercial private carriers, but it would equally apply to anyone who — like a courier for a messenger service. All those private carriers are comprehensively and have been comprehensively regulated since the founding of the nation. Is the comprehensive regulation of private carriers you're mentioning referred to carriage for hire or carriage uncompensated? Both, Your Honor, both. The regulations don't distinguish between what a private carrier has. For example, the 310.4, the responsibilities of a carrier, a volunteer would have to comply with all federal regulations just as much as a FedEx commercial carrier would have to comply. Mr. Scharf, may I ask you a question? Is it your position that the state of Arizona could not regulate the hours of work of carriers outside the postal service? For instance, a bellhop who brings me my letter to my room in a hotel, it could not be — he couldn't have a minimum wage? No, Your Honor, it is not. Our position is very narrow. It's just that the state of Arizona can't say this person can and this person cannot. Let me give you another situation. Suppose that the Arizona legislature has found that letters are being intercepted and checks are being pilfered and money is being pilfered from mail by non-USPO carriers. Can they say nobody can be in the business of delivering mail unless they pass a background check? Whether Arizona can impose that regulation? Right. That regulation wouldn't interfere with this comprehensive regulation because these regulations don't speak to those types of regulations. So they can regulate certain aspects of non-USPO delivery but not others? Where is that? Is there any indication of that in the text of the statute? So I think, for example, like anti-discrimination law, which I think is similar to what you're asking about, these generally applicable laws that aren't interfering with what the federal government has occupied. The occupation is who is allowed and under what circumstances to deliver without criminal sanctions. Well, that's what I'm saying. Can they say that bellhops at hotels have to have background checks in order to deliver letters to the residents of the hotels? So in that instance, Your Honor, it wouldn't be governed under the postal laws because you would not need to. One thing that's also limiting the preemption analysis is the postal laws aren't triggered unless a post route is used. So in that instance, you're being delivered within a hotel. There's no post route that's being used, and thus the postal laws aren't triggered. And the private express statute relates to delivery over a post route, and post routes are defined by regulation of statutes. And I see that I'd like to reserve as much time as I can. Thank you, Your Honors. Thank you, Your Honors. Good afternoon, and may it please the Court. I am Andrew Pappas, appearing on behalf of the Defendant Eppley, Arizona Attorney General Mark Brnovich. At its core, as my opponent made clear, this is a preemption case. The allegedly preempted statute is HB 2023, a State ballot handling law that this Court knows well. The allegedly preempting statute is 18 U.S.C. section 1696C, which reads in pertinent part, quote, This chapter shall not prohibit the conveyance or transmission of letters or packets by private hands without compensation. The statute carves out a narrow exception to the general criminal penalties that attach to the private carriage mail. But it does not confer on anyone a right to do anything. And Ms. Knox cannot possibly show that when Congress enacted the private hands exception more than 170 years ago, Congress clearly and manifestly intended to preempt a State ballot collection law like HB 2023. At least nine other States have limited who may collect a voter's early ballot, but no court has held that the private hands exception preempts any of those laws. As far as ---- May I ask you a question about the reach of the Arizona statute? Yes, Your Honor. H provides that an election official, United States Post Office, postal service worker, or any other person who is allowed by law to transmit U.S. mail. What does that last phrase mean? Any other person allowed by law to transmit U.S. mail? I mean, obviously, you have the private hands exception, which would indicate that that person is permitted by law to transmit. But you don't seem to read it that way, so. No, Your Honor. I don't read that language as encompassing gratuitous private carriers like Ms. Knox. I think what the law ---- What does it mean if you're not a postal carrier? Sure. What it refers to, Your Honor, is just a couple of examples. One would be Department of Defense and Department of Transportation personnel who handle postal service duties at branch post offices on U.S. military installations. That's 39 U.S.C. section 406. Another example would be Department of State personnel who are designated by the Department to perform postal service duties at branch post offices established at U.S. diplomatic posts. That is 39 U.S.C. section 413B. So why don't you think the private hands exception constitutes an ability for or authorization for someone to transmit letters? Well, no court, so far as I'm aware, has ever interpreted ---- I understand that. But this is an Arizona law. That's why I'm asking you for your ---- I'm just trying to get the meaning and how you construe it, because it's a felony, obviously. It is. Well, certainly what the law intends to prohibit is third-party ballot collection by persons other than those who are statutorily accepted from the statute's reach. If the statute were to be read to allow any third party who carries mail, or rather who carries ballots gratuitously, to fall within the statute's exceptions, then obviously the exceptions would swallow the rule. The other thing, Your Honor, is that the language in subsection H, which Your Honor referenced, has to be read as a whole. It's persons who are allowed to transmit U.S. mail and are engaged in official duties. Ms. Knox is not ---- What does that mean? I think it's ---- I mean, she would say, I guess, probably argue she's engaged in her official duties as a precinct worker. And she would be mistaken. I know. That's why I'm puzzling about the wording of the statute. I think the language by law has to be read through the statute. I think the official duties in question have to be ones that are imposed by law. As the district court pointed out, the duties of a precinct committee person, which are the duties that Ms. Knox points to, are defined by statute. But those duties do not include carrying other people's ballots to the polls. If there were ---- I understand your point. I just want to get through a couple more issues because I know your time is limited. Certainly, Your Honor. Just so I understand the reach of the statute, let's take the reverse of Judge Bea's question. Let's say the bellhop takes a ballot down to be posted at the hotel. I gather that would be within the statutory reach. That's correct, Your Honor. I believe that ---- So that wouldn't be a felony. I assume the same thing would be true if a voter passed a messenger service, whether it's a bicycle messenger service or an Uber postal or whatever, to deliver it. That would also be prohibited under the statute. Is that right? I think that's probably correct, Your Honor. I think the purpose of the statute was to prevent, as a general matter, third-party ballot collection, except for certain statutorily authorized persons. That, by the way, follows the recommendations of the Carter-Baker Commission report, as this Court knows well. The ---- and this was enacted as a prophylactic measure to prevent ballot abuse and fraud. I understand all of that. I'm just trying to understand the scope, what you believe the scope of the law is and its meaning. One other. For example, if a ---- if Ms. Knox said, I'll ---- I see you've got a stamped ---- let me put it in the post office box, again, that would be a felony. A stamped ballot? Yes. Yes, I think that's correct, because Ms. Knox has no right under Federal law or any other law to carry other people's mail, whether gratuitously or otherwise. Okay. I think I understand your argument. So go ahead and make your point, Your Honor. Certainly. You know, and I think that really is at the heart of it. The ---- again, no court has ever held that the private hand's exception confers on anyone an affirmative right to do anything. No court has ever held that the private express statutes or their exceptions preempt anything. And for decades, Federal and State courts have made clear that postal preemption applies only if a State or local law interferes with the postal service's ability to carry out its work. HB 2023 clearly doesn't do that. First, Knox's conflict preemption theory, as I understand it, is that HB 2023 somehow obstructs or frustrates Congress's purpose in enacting the private express statutes and their exceptions. It plainly does not do that. HB 2023 limits who may collect a voter's early ballot. It doesn't necessarily implicate the Federal postal laws at all, because, simply put, an early ballot isn't mail simply because it could be mailed. Even if HB 2023 did implicate the Federal postal laws, it would not obstruct their purposes in any way. The best indicator of Congress's purpose is the statutory language it enacts. But the private express statutes and their exceptions reveal no purpose that HB 2023 frustrates. As I said earlier, the private hands exception, which is at the center of Knox's preemption theory, does not create an affirmative right in anyone to do anything. It is an exception to the- Your opposing counsel argues that there's a fairly detailed regulatory structure that regulates both private carriers for hire and uncompensated carriers, and that this occupies a field much as in-or creates a conflict much as in the United States v. Arizona. What's your response to that? I think the first response is that that simply isn't so, that the regulatory structure isn't nearly as thick as the one that was at issue in Arizona v. United States. The implementing regulations do not confer affirmative rights that the statute itself does not confer. The implementing regulations use the word permissible in the sense that private carriage of mail for free is not subject to the general criminal penalties that attach to the private carriage of mail. As for Congress's purposes, there's nothing in the statutory language that suggests Congress intended to create a freestanding preemptive right. And, in fact, when the Supreme Court has construed the private hands exception in the private express statute, it's made clear that it is a narrow exception, an act at a time when Congress was concerned with boosting the Postal Service's revenues by eliminating competition. HB 2023 doesn't frustrate those purposes in any way. It limits who can collect voters' early ballots, but it allows postal workers engaged in official duties to do so. What would frustrate HB 2023's, excuse me, what would frustrate Congress's purposes is to do what Ms. Knox urges, which is to transform the narrow private hands exception into an affirmative Federal right to carry mail for free and then deploy it to preempt unrelated State laws. As for the private express statutes as a whole and the postal monopoly they codify, the Supreme Court tells us that they have the same purposes as the private hands exception, protecting postal revenues by preventing competition from private carriers. Again, HB 2023 doesn't frustrate those purposes in any way. If anything, it is Ms. Knox's position that would. HB 2023 also doesn't frustrate what Knox calls the primary purpose of the Federal Postal Laws, quote, to achieve national integration and to ensure that all areas of the nation are equally served by the Postal Service. HB 2023 doesn't stand in the way of that purpose at all. As I already noted, it allows the Postal Service to collect early ballots just the same as it would without HB 2023. So HB 2023 doesn't conflict with the private express statutes or their exceptions or the broader postal policy in any way. Now, with regard to... At some point, could you also address whether HB 2023 is too vague to give a statement about what its requirements are? Yes, Your Honor. I certainly don't think it is too vague. First of all, Ms. Knox plainly understands what HB 2023 requires and permits. She stated in a declaration attached to her complaint, quote, I understand that since HB 2023 went into effect, I am prohibited from collecting and delivering another person's early ballot. That's correct, because Ms. Knox doesn't qualify for any of HB 2023's limited exceptions, as she knows. That should be the end of the inquiry. I don't think that as somebody who understands the plain reach of HB 2023, Ms. Knox can possibly claim that it's vague. And I think that there... Well, I have to say, I mean, in looking at 2023, if you're allowed to carry mail, which, of course, the private hands exceptions allow you to carry mail, that would seem to take you out of the first part. So the only question is what official duties mean, right? No, I don't... I mean... I don't think so, Your Honor. I don't think... Well, are people allowed under federal statute to deliver mail by private hands in an uncompensated manner? Federal law does not give anyone an affirmative right to do that. And, again, I... No, no, this is allowed. It's not an affirmative right. I think the best way to read that language is that someone must be authorized by federal law and engaged in official duties in order to fall within the statute's exemptions. So all that language needs to be read together. And I don't think it can be parsed out. I don't think that the statute... No, that wasn't my question. I said the first part. I think there's a reasonable debate about whether... In fact, there may be no debate at all. She is authorized otherwise to transmit a letter by private hand. Ms. Knox, if it weren't a ballot, she could take anything from somebody and transmit it by private hands in an uncompensated way under federal law, right? Federal law would not prohibit her from doing so, but I don't think it is true that federal law expressly or affirmatively authorizes her to do so. But, again, the statute... No, it says allowed by law. It doesn't say authorized by law. So then you fall to the second part. Again, we're talking about vagueness. We're not talking about interpretation. And official duties, I don't know. It doesn't say by whom. Your Honor, I think, again, the statutory language needs to be read together. It says allowed by law and engaged in official duties. I think that language needs to be read together. I mean, frankly, I think any statute, if it were broken up into enough small pieces, could be called vague if you looked at it in the right way. That's not what the vagueness inquiry requires or entails, for that matter. The question is whether an ordinary person of ordinary intelligence can understand what the statute means. I think an ordinary person can. And, in fact, Ms. Knox can, as she admits. Kennedy. But the test doesn't have to be an objective test, not a subjective test? It is an objective test. I think Ms. Knox would be hard-pressed to have standing to assert the claim if she certainly does. But, again, I think the whole of the statute needs to be read together. The question is, is somebody engaged in official duties when she is purporting to do this? The answer in Ms. Knox's case is no, and that is defined by statute. If there were any doubt about the scope of the statute, I think it would be conclusively resolved by this Court's decision just a few weeks ago in DNC, where the Court construed the statute definitively to say, I don't have the quotation right at my fingertips, but refers to, for example, male carriers acting as such. This Court obviously understood what HB 2023 means as well. It means that you have to be authorized by law to do something and engaged in official duties while doing it. It cannot be enough to broadly construe official duties as Ms. Knox has tried to do here and then say, well, that renders the statute vague. That is just simply not the proper way to conduct the vagueness analysis. I'll say one last thing about preemption, unless the Court has other questions on that, and that is with respect to field preemption. The courts have held for decades that postal preemption applies only when there's been a physical interference with the Postal Service's ability to do its work. That obviously does not exist here. My opponent has not even tried to distinguish those cases because he cannot do so. With that, I thank the Court for its time. Roberts. Thank you, counsel. I'll try to squeeze in a bunch very quickly, if you'll permit me. The Attorney General just came up here and told Your Honor that it's probably correct that a delivery service, a messenger, would be illegal. They've never explained to this Court whether or not FedEx would be allowed to carry a ballot or not and what official duties FedEx would have. More importantly, we certainly know that the Attorney General believes elections officials are allowed to deliver mail, but they have never pointed to anything in State statute where an elections official is authorized to deliver mail. If anything, a precinct committee person who was statutorily allowed and required to help someone vote would much more closely have an official duty to deliver mail. Moreover, here we have criminal sanctions that are harsher than the criminal sanctions imposed by Federal law for private carriage. So there is a heightened scrutiny as to interpreting what is the scope of this — what is the scope of this statute. And it's very concerning that the Attorney General can't answer these important questions about a law that imposes a year in prison and $150,000 in fines. Those — that type of vagueness and the heightened scrutiny necessary for State criminal statutes is critical. One last point I would like to make on the preemption analysis is what Congress has always wanted to do in relating to postal service, lowercase p, lowercase s, because they regulate not just USPS, but postal services generally, is to encourage Americans to send letters. And that's been a basic assumption about the universal mail delivery system. So they desired to — they designed a postal system that balanced both the need to have a financially viable USPS that also had — with the need for convenient alternatives. So HB 2023 upsets that balance by criminalizing a number of those convenient options. And as this Court recognized a few weeks ago, that one of the findings in the district court was that there were — and I understand that the quantification was not to this extent, but there were some voters who, quote, were slightly more difficult or inconvenient for a small yet unquantified subset of voters to return their early ballots. So this law, this State law, is doing exactly that. It's frustrating at least this small set of individuals what Congress wanted to give them, which was the option to deliver — have their letters delivered by the postal service, the United States Postal Service, or through these other alternatives, which they clearly — the statute and regulations expressly grant the ability to individuals to deliver. And that is a clear frustration of Congress's purpose behind its entire postal scheme. It's — to say that it doesn't impact the postal functions, I think, is just proven by the statute itself. When I was talking to Your Honor about 39 U.S.C. 601 and subsection B-1, where as long as you put, you know, postage on your ballot, it can be delivered. If we're not allowing the United States postal system to have that postage, or even to let someone go to take a letter and deliver it to a mailbox, that's clearly frustrating a postal function. It's depriving the postal system of those post funds, because the way that this ballot — the way that the postage is paid on these early ballots is only once it's entered United States Postal Service do they get paid. Yes. You're over your time. If you have time for one last question, though. How much of your argument depends on what constitutes mail? You seem to be arguing that anything that's put in an envelope and addressed comes within the ambit of Federal regulation. Is that your position? Your Honor, what comes in the ambit of Federal regulations is anything that comes within the definition of letters. That's 39 CFR 310.1. And it's not just that it could be mailable. It's — as I was discussing with Judge Bea, the other important trigger is that you're using a post route to deliver it. So if I were to hand my co-counsel a note, even if it was addressed to her and it had a message in writing, it would not be implicating the postal laws because I'm not using a post route to deliver this letter, although it could be delivered. No, but if I address a card to my kids and take it home, that would be fall within your definition. Yes, Your Honor. And in that case, it's within another exception called the letters of the carrier exception, and that's 310.3b, I believe, which says that an individual is allowed to deliver their own letters. So when an individual delivers their own early ballot, which it doesn't seem the Attorney General has any problem with them doing, they're still doing so at the express permission of Congress because they're not paying postage on that delivery. It's the delivery of their own letter. Okay. Thank you, counsel. The case just argued to be submitted for decision. Thank both of you for your arguments and your brief and coming to San Francisco today. And we will be in recess. Thank you, Your Honors. Thank you. Thank you. Thank you.
judges: Thomas, Bea, Ikuta